# BULLION BECK & CHAMPION MINING COMPANY v. EUREKA HILL MINING COMPANY.

No. 1993. Decided August 25, 1909 (103 Pac. 881).

1. BOUNDARIES—AGREEMENTS—CONSTRUCTION—"ABOUT." The word "about," in an agreement fixing the boundary between adjoining mining claims, which stipulated that the boundary should be a vertical plane downward on a line commencing at the southeast corner of the surface ground of one of the claims, then running northerly along the easterly side line of the adjoining claim to the intersection with the westerly side line of the adjoining claim which was at a point south 19° 47′ east and about 727.3 feet distant from the northeasterly corner stake of the adjoining claim, etc., entered .into, with knowledge of the location of the corners marking the boundaries of the claims, and with knowledge that a monument had been established at the point of intersection, meant that the distance from the northwest corner stake of the adjoining claim to the point of intersection was not intended to .be stated with exact precision, but the established corners and monument control. (Page 336.)

2. BOUNDARIES—MONUMENTS—COURSES AND DISTANCES. In case of doubt as to boundary lines, monuments and lines actually marked and capable of identification control courses and distances. (Page 337.)

3. BOUNDARIES — AGREEMENTS — CONSTRUCTION. Corporations owning adjoining mining claims E. and B. adopted resolutions fixing the boundary, stipulating that the boundary of the lodes in E. claim and B. claim for the length of B. claim should be a vertical plane downward commencing at the southeast corner surface of B. claim, thence along the easterly side of B. claim to the intersection with the westerly side of E. claim, etc. The agreement fixing the boundary provided that it should be a vertical plane downward on a line commencing at the southeast corner of the surface ground of B. claim, thence running northerly along the easterly side line thereof to the intersection with the westerly side line of E. claim, which was at a point 19° 47' east and 727.3 feet distant from the northwesterly corner stake of E. claim, etc. Held, that the parties intended to and did fix the point of intersection of the westerly side line of E. claim with the east line of B. claim as the end of the first and the beginning of the second call in the survey of the boundary. (Page 337.)

4. MINES AND MINERALS—TRESPASS—LIMITATIONS—EVIDENCE. Evidence, in an action for trespass for removing ore from plaintiff's ground brought more than eight years after the trespass, when considered in connection with defendant's answer, held to support a finding that plaintiff did not have actual knowledge of the trespass prior to six months of the bringing of the action, so that the action was not barred under Comp. Laws 1907, section 2877, limiting an action for trespass to three years, and providing that when trespass is committed by underground workings on any mining claim the cause of action shall not accrue until the discovery of the trespass. (Page 337.)

APPEAL from District Court, Fifth District; *Hon. Joshua Greenwood*, Judge.

Action by the Bullion Beck & Champion Mining Company against the Eureka Hill Mining Company.

Judgment for plaintiff. Defendant appealed.

AFFIRMED.

*Van Cott, Allison & Riter* for appellant.

*Dickson, Ellis, Ellis & Schulder* and *P. T. Farnsworth, Jr.*, for respondent.

APPELLANT'S POINTS.

Where the circumstances of the case show that the courses and distances are more reliable tests of the location of the land than the monuments found upon the ground, then courses and distances will prevail. See the general discussion in 4 Am. and Eng. of Law (2d Ed.), p. 784, et seq.; White v. Lunning, 93 U. S. 514, 525; Johnson v. Archibald, 22 Am. St. Rep. 27; Bighon v. McDowall, 7 S. W. 315; Hale v. Cottle, 28 Pac. 901; Gerald v. Freeman et al., 4 S. W. 256; Hubbard v. Dusy, 80 Cal. 281; Baldwin v. Brown, 16 N. Y. 359; Davis et al. v. Rainsford, 17 Mass. 210.

McCARTY, J.

This is an appeal from a judgment rendered in favor of the plaintiff for $33,891.22, damages for an alleged trespass by defendant upon plaintiff's property.

The parties are the owners of adjoining mining claims situate in Tintic mining district in Juab County, this state. Prior to the year 1888 certain controversies existed between them respecting the true boundary of the lode which lay partly within the property of plaintiff and partly within that of defendant. In consequence of such controversy, the board of trustees of plaintiff company met July 2, 1888, and passed the following resolution:

"The terms of a proposed compromise of the disputes and litigation pending between this company on the one side and the Eureka Hill Mining Company of the other side, respecting the boundaries of the lodes in the mining claims of the parties, and trespasses thereon, and the extraction of ores therefrom, was considered by the board, and on motion it was: Resolved that said disputes and litigation be compromised and settled on the following terms: That the boundary of the lode or lodes in the Eureka Hill mining claim and the Bullion mining claim, lot 76, for the length of said Bullion mining claim, lot 76, shall be a vertical plane downward, commencing at the southeast corner surface of the Bullion mining claim, lot 76, thence running along the easterly side line of the said Bullion mining claim, lot 76, to the intersection with the westerly side line of the Eureka Hill mining claim, thence along what is known as the Court line, to wit, north 43° west 300 feet, thence north 24° 45′ west 371 feet, thence north 25° east 115 feet, more or less, to a

point where said line intersects a westerly protraction of the north-erly end line of the Eureka Hill mining claim. And it was further resolved that H. B. Clawson, a director of this company, is hereby constituted and appointed the attorney in fact of this company, and authorized to execute all instruments of conveyance and papers necessary to fulfill, complete and execute this agreement."

On the same day that the foregoing resolution was passed (July 2, 1888), the board of trustees of defendant company met and passed the following resolution:

"Resolved that said disputes and litigation respecting the bound-ary of said lode or lodes be settled and compromised on the fol-lowing terms: The lode boundary between the Eureka and Bullion 76 mining claims for the length of the Bullion 76 mining claim, included within its end lines and protractions thereof, shall be a vertical plane, commencing at the southeast corner of said Bullion 76 mining claim, and running northerly along the easterly side line to the intersection with the westerly side line of the said Eureka, thence running north 43° west 300 feet, thence north 24° 45′ west 371 feet, thence north 25° east 115 feet, more or less, to a point which intersects the westerly extension of the northerly end line of the Eureka mining claim, magnetic variation 16° 30′ east. . . . The president and secretary of the company are authorized to execute and deliver, also to receive for this company, all proper instruments to carry into effect the terms of said compromise."

On July 2, 1888, the parties so authorized by the resolu-tions met and executed an agreement, which, after reciting the resolutions, provides as follows:

"Now, in consideration of the premises, the parties  mutually grant, release and agree to and with each other as follows:

"The boundary line of the lode or lodes under the surface of the Eureka, Bullion 76 and West Bullion, lot 90, mining claims, for the length of the said Bullion 76 mining claim and within protractions of its end lines, is, and from henceforth shall be, a vertical plane downward on a line commencing at the southeast corner of the surface ground of the said Bullion 76 mining claim, thence running northerly along the easterly side line of said mining claim to the intersection with the westerly side line of the Eureka mining claim (which is at a point south 19° 47′ east, and about 727.3 feet distant from the northwesterly corner stake of the said Eureka mining claim), thence following what is known as the 'Blue' or Court line, to wit, running north 43° west 300 feet, thence north 24° 45′ west 371 feet, thence north 25° east 115 feet, more or less, to a point where the line will intersect a westerly protraction of the northerly end line of the Eureka mining claim.".

It will be noticed that the calls, courses, and distances of the boundary line in the compromise agreement correspond exactly with those in the resolutions, except that the following matter, which does not appear in the resolutions, is added to and made a part of the first call in the agreement, namely: "Which is at a point south 19° 47' east and about 727.3 feet distant from the northwesterly stake of the said Eureka mining claim." In 1895 and 1896 defendant company excavated a large stope called the Blondin stope. The excavation of this stope was commenced on the 700 foot level of defendant's mine east of and near the dividing line between its own ground and that of the plaintiff. This stope was worked upward above the 700 foot level of the defendant's mine and then westerly across the dividing line into plaintiff's, the Bullion 76 mine, from which mine defendant extracted and removed large quantities of valuable ore. This action was commenced in December, 1904, more than eight years after the trespass, to recover damages for the ores so taken and removed by defendant from plaintiff's ground. Plaintiff, in its complaint, set forth the facts constituting the trespass, and alleged the boundary line of the lode to be as the same is described in the foregoing resolutions. It also further alleged:

"That plaintiff did not discover until within six months last past any of the facts constituting the trespass herein complained of, and that said plaintiff could not have, by the exercise of reasonable diligence, sooner discovered any of the facts respecting the mining, extracting, or removing of any of said ores by said defendant."

Defendant, in its answer "denies the trespass, . . . except that it admits that during the year 1904 the defendant mined and extracted not more than 76.8 tons of ore of the value of not more than $207.75 from a certain stope which extended a short distance beyond and westerly of the vertical plane hereinbefore described; that at the time of such excavation neither party knew that the same, or any portion thereof, was westerly from or beyond said vertical

plane; . . . that said trespass was unintentional and innocent on the part of defendant." It is also admitted in the answer that defendant "more than nine years ago extracted from a certain stope lying westerly of said plane about five hundred tons, of the value of not more than $1,559.00; that the defendant at the time in good faith believed it was within its own property and entirely east and within said vertical plane."

The answer denies the description of the vertical plane set forth in plaintiff's complaint, and affirmatively alleges it to be, so far as material here, as follows:

"Beginning at the southwest corner of the surface of the Bullion mining claim, lot 76, and thence running northerly along the easterly side line of the said mining claim to its intersection with the westerly side line of the Eureka mining claim (which is about 727 feet from the northwesterly corner stake of the Eureka mining claim)."

It is also alleged in the answer that the "cause of action set forth in plaintiff's complaint, except as to the 76.8 tons of ore, was and is barred" by the statute of limitations. The court, in its seventh finding of fact, found that the point of intersection of the westerly side line of the Eureka lode mining claim, U. S. lot 39, with the east side line of the Bullion lode mining claim, No. 76, is south 19° 47' east 734.3 feet from the northwest corner post No. 1 of the Eureka lode mining claim. Defendant insists that this finding is not only unsupported by, but is contrary to, the evidence. Plaintiff introduced in evidence the resolutions and compromise agreement hereinbefore mentioned. It also introduced in evidence certain maps purporting to show, so far as material in this case, the location corners and distances of the boundaries of the mining claims mentioned, the true course and location of the boundary line through the Blondin stope, and the excavations made in plaintiff's ground by the defendant. These maps were traced and prepared by C. P. Brooks, a competent civil engineer, who surveyed the mining claims in question and established the corners and

boundaries thereof in the year 1887, a year prior to the time the compromise agreement was entered into. Mr. Brooks was called as a witness and testified that at the time of the making of the survey he erected a monument at the point of intersection of the westerly side line of the Eureka mining claim with the east side line of the Bullion No. 76 mining claim. He also testified, and the maps show, that the point of intersection is south 19° 47' east 734.3 feet from the northwest corner stake of the Eureka mining claim. In fact there is no conflict in the evidence on this point, unless it can be said that the parenthetical clause in the compromise agreement, which recited that the point of intersection "is at a point 19° 47' east, and about 727.3 feet distant from the northwesterly corner stake of said Eureka mining claim," creates a conflict. It might be well to observe here that it is conceded that the location of the boundary line through the Blondin stope is controlled, fixed, and determined by the point of intersection of the westerly side line of the Eureka mining claim with the east side line of the Bullion No. 76 mining claim, and that the evidence shows that if the end of the first call and the beginning of the second call were fixed at a point 19° 47' east 727.3 feet south from the northwest corner stake of the Eureka mining claim, as contended for by defendant, instead of 734.3 feet, the point of intersection as found by the court, the boundary line through the Blondin stope would be shifted 4.9 feet west from where the court by its findings adjudged it to be, and defendant's liability for the value of the ores extracted and removed by it from plaintiff's ground would thereby be very materially reduced from what the court found it to be.

The first call of the boundary line in question is described in the resolutions and agreement referred to as commencing at the southeast corner of the Bullion 76 mining claim, thence running along the easterly side line of said mining claim to the intersection with the westerly side line of the Eureka mining claim, and, as we have stated, the evidence, practically without conflict, shows that the true point of intersection is 734.3 feet from the northwest corner stake of

the Eureka mining claim; but counsel for defendant insist
that the parenthetical clause in the agreement conclusively
shows that the parties intended to and did fix the point of
intersection at a point 727.3 feet from the northwest corner
post of the Eureka, and in their brief they say: "The so-
called point of intersection is described with particular
reference to its course and distance from the northwest cor-
ner stake of the Eureka mining claim, and that this call
is peremptory, and that the call for the easterly side line
of the Bullion 76 is conflicting must be disregarded as inci-
dental and not controlling." We are therefore, in effect,
asked to disregard the first call of the description of the
boundary line as the same appears in the resolutions and
agreement, and to substitute therefor the following: "Com-
mencing at the northwest corner post of the Eureka mining
claim and running thence south 19° 47' west 727.3 feet"—
which would necessitate a change in each of the other calls.
In other words, by thus changing the base from which the
courses and distances of the boundary line are determined,
it would establish a boundary line for the parties different
from the one agreed upon by them, which, of course, we
have no right to do. We are therefore of the opinion that
the contract is not susceptible of the construction contend-
ed for by counsel, namely, that the parties intended to
definitely fix the point of intersection 727.3 feet from the
northwest corner stake of the Eureka mining claim. The
words used are "about 727.3 feet distant," etc., which, in
view of the fact that the location of the corners mark-
ing the boundaries of the mining claims in question
were known, and that a monument had been estab-
lished at the point of intersection, must be taken to mean
that the distance from the northwest corner stake of the
Eureka mining claim to the point of intersection was not
intended to be stated with exact precision. (1 Jones, Real
Prop. Conv., sec. 407; *Brady v. Hennion,* 8 Bosw. [N. Y.]
528; *Cutts v. King,* 5 Green. [Me.] 482; 1 Am. and Eng.
Ency. L. 196; 1 Words & Phrases, 22.)

Furthermore, it is a familiar rule of law that, in case of

doubt as to the boundary lines, monuments control courses and distances. In Jones, Real Prop. Conv., sec. 381, the author says: "It is a rule that monuments prevail in cases of discrepancies over courses and distances. The ground of the rule is that mistakes are deemed more likely to occur with respect to courses and distances than in regard to objects which are visible and permanent"—citing many cases. In 5 Cyc. 915, it is said: "Lines actually marked or surveyed and capable of identification will, according to well-settled principles of law, control calls for course and distance in the determination and location of a boundary." And, furthermore, the agreement, when read in connection with the resolutions, clearly shows that the parties intended to and did fix the point of intersection of the westerly side line of the Eureka mining claim with the east line of the Bullion 76 mining claim as the end of the first and the beginning of the second call in the survey of the boundary line in question; and the evidence without conflict shows that the intersection of these two lines is at the precise point where the court found it to be, and as indicated on plaintiff's maps.

On the issue presented by defendant's plea of the statute of limitations, the court, so far as material here, made the following findings of fact: "That the plaintiff company prior to July 24, 1904, had no knowledge, information, or notice of any fact or circumstance whatever to lead it to make any investigation or inquiry to ascertain whether the defendant company had trespassed upon or committed waste in any of its (plaintiff's) said mining claims, or extracted ore or other material, or worked west of said plane of division hereinbefore referred to; and that the said plaintiff did not discover the facts constituting the trespass or any of the trespasses hereinbefore referred to and found to have been committed by the said defendant company, or any fact to lead said plaintiff company to believe or suspect that said defendant company, by or through its underground workings or otherwise, had proceeded with

36 Utah—22

its work, or had extracted rock or earth or ore westerly of said plane of division established by said agreement hereinbefore mentioned, until the 24th day of July, 1904; and that this suit was commenced by plaintiff against the defendant on December ——, 1904." It is insisted on behalf of defendant that this finding is not supported by any evidence in the record, and is therefore erroneous. It is not claimed, nor does the record show, that plaintiff had actual knowledge of the acts constituting the trespass prior to July 24, 1904; but it is contended on behalf of defendant that plaintiff, by the exercise of ordinary diligence, could have discovered the trespass at the time it was being committed, and that plaintiff must be deemed to have knowledge of that which, by the exercise of ordinary diligence, it could have discovered, and that therefore the cause of action is barred by section 2877, Comp. Laws 1907, which, so far as material to this action, is as follows:

"Action for liability created by . . . trespass, waste, fraud, etc. Three years. . . . An action for waste or trespass of real property, within three years; provided, that when the waste or trespass is committed by means of underground workings upon any mining claim, the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts concerning such waste or trespass."

The record is voluminous and contains nearly nine hundred pages of testimony, besides several maps showing the boundaries of the mining claims mentioned and the underground workings and excavations in and about the place where the trespass was committed. To reproduce the maps and sufficient of the testimony to clearly illustrate the trespass and the circumstances and conditions under which it took place would require more space than we feel justified in devoting to one opinion. We remark, however, that we have carefully examined the record and are satisfied that the findings of the court are amply supported by the evidence. Not only does the evidence support the findings of the court on this branch of the case, but we find the following affirmative allegations in defendant's answer: "(1) That de-

fendant at the time (referring to the trespass) in good faith believed it was within its own property and entirely east and within said vertical plane; (2) that said trespass was unintentional and innocent on the part of defendant; (3) that at the time of such excavation *neither party knew the same or any person thereof was westerly from said vertical plane."* John A. Kirby, a witness for the plaintiff, testified that he was employed by plaintiff and went to work in the Bullion 76 mine in July, 1884, and remained with the company until January, 1900. He was first shift boss, afterwards foreman, and then superintendent of the mine. During all these years he was familiar with the work as it progressed in the mine, and in the course of his testimony he says, referring to the time when the trespass took place: "I had no idea they (employees of the defendant company) were working anywhere near the 'blue' (boundary) line, or within a few feet of it." On the other hand, we fail to find any evidence in the record which tends to show any fact or circumstance that ever came to the knowledge of plaintiff prior to July, 1904, which was calculated to put it or its agents on notice that defendant had trespassed upon and taken the ore in question from plaintiff's mine.

Judgment affirmed, with costs to plaintiff.

STRAUP, C. J., and FRICK, J., concur.